Appeal Nos. 2015-1242

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

_____

**CLICK-TO-CALL TECHNOLOGIES, LP,**
Appellant,
**v.**
**ORACLE CORPORATION, ORACLE OTC SUBSIDIARY, LLC, INGENIO, INC.,
YELLOWPAGES.COM, LLC,**
Appellees.

_____

Appeals from the United States Patent and Trademark Office,
Patent Trial and Appeal Board in Nos. IPR2013-00312.

_____

**BRIEF FOR INTERVENOR – DIRECTOR OF
THE UNITED STATES PATENT AND TRADEMARK OFFICE**

_____

NATHAN K. KELLEY
Solicitor

THOMAS W. KRAUSE
Deputy Solicitor

SCOTT C. WEIDENFELLER
Senior Counsel for Patent Law
  and Litigation

MARY L. KELLY
Associate Solicitor

*Office of the Solicitor* – Mail Stop 8
U.S. Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
571-272-9035

*Attorneys for the Director of the
United States Patent and
Trademark Office*

May 26, 2015

# RELEVANT STATUTORY PROVISIONS

35 U.S.C. § 314(d) provides that:

> **(d) No Appeal.** - The determination by the Director whether to institute an inter partes review under this section shall be final and nonappealable.

35 U.S.C. § 315(b) provides:

> (**b**) **Patent Owner's Action**.— An inter partes review may not be instituted if the petition requesting the proceeding is filed more than 1 year after the date on which the petitioner, real party in interest, or privy of the petitioner is served with a complaint alleging infringement of the patent. The time limitation set forth in the preceding sentence shall not apply to a request for joinder under subsection (c).

# TABLE OF CONTENTS

I.    STATEMENT OF JURISDICTION.....................................................1

II.   STATEMENT OF THE ISSUES.......................................................1

III.  STATEMENT OF THE CASE..........................................................3

   A.  Statutory And Regulatory Background ........................................3

      1.  Post-Issuance Administrative Review ....................................3

      2.  Inter Partes Review Procedures Under The AIA .........................4

      3.  The USPTO's Rulemaking Authority.....................................5

      4.  IPR Trial And The Final Written Decision ..............................8

   B.  Proceedings before the Board....................................................8

      1.  The prior relationship between the parties...............................8

      2.  The Board's decision to institute IPR ...................................9

      3.  The Board's Final Written Decision ......................................10

IV.  SUMMARY OF THE ARGUMENT ...............................................11

V.   ARGUMENT ...........................................................................11

   A.  Standard of review...............................................................11

   B.  Decisions to institute IPR are non-appealable and cannot be reviewed by this
       Court ...............................................................................12

      1.  The legislative history of the AIA confirms the absence of any statutory
          basis for C2C's present challenge ........................................14

      2.  The only reasonable reading of the statute is that section 314(d)    bars the
          review of a section 315(b) determination made as part of an institution
          decision under section 314 ................................................19

i

C.  Even if the Court had jurisdiction to review the Board's decision to institute IPR of C2C's patent, the Board did not abuse its discretion in making its section 315(b) determination ........................................................................21

VI.  CONCLUSION ................................................................................................25

# TABLE OF AUTHORITIES

## Cases

*Abbott Labs. v. Cordis Corp.*, 710 F.3d 1318 (Fed. Cir. 2013) ................................4

*Auer v. Robbins*, 519 U.S. 452 (1997) ....................................................12

*Bennett v. Spear*, 520 U.S. 154 (1997)................................................17-18

*Bonneville Assocs., Ltd. P'ship v. Barram*,
    165 F.3d 1360 (Fed. Cir. 1999) ...................................... 10, 22, 23

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*,
    467 U.S. 837 (1984) ...............................................................11

*Cooper Techs. Co. v. Dudas*, 536 F.3d 1330 (Fed. Cir. 2008) ..................................3

*Cuozzo Speed Techs., LLC, In re*, 778 F.3d 1271 (Fed. Cir. 2015)................ passim

*Eli Lilly & Co. v. Board of Regents of University of Washington*,
    334 F.3d 1264 (Fed. Cir. 2003) ...........................................22

*Etter, In re*, 756 F.2d 852 (Fed. Cir. 1985)................................................4

*FTC v. Standard Oil Co., 449 U.S. 232 (1980)*......................................................18

*Graves v. Principi*, 294 F.3d 1350 (Fed. Cir. 2002) .................................. 10, 22, 23

*Heckler v. Ringer*, 466 U.S. 602 (1984)................................................24

*Hiniker Co., In re*, 150 F.3d 1362 (Fed. Cir. 1998)....................................15, 16, 17

*Litecubes, LLC v. N. Light Prods., Inc.,* 523 F.3d 1353 (Fed. Cir. 2008) ..............11

*McDaniel, In* re, 293 F.3d 1379 (Fed. Cir. 2002)....................................................12

*Morgan v. Principi*, 327 F.3d 1357 (Fed. Cir. 2003)..............................................18

*St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.*,
   749 F.3d 1373 (Fed. Cir. 2014) ........................................................ 15, 19, 20, 21

*Sullivan, In re*, 362 F.3d 1324 (Fed. Cir. 2004) ........................................................12

*Zoll Lifecor Corp. v. Phillips Elec. N. Am. Corp.*,
   577 Fed. Appx. 991 (Fed. Cir. 2014) ................................................................20

**Statutes**

5 U.S.C. § 704 ................................................................................................................17

5 U.S.C. § 706(2)(A) ......................................................................................................12

28 U.S.C. § 1295(a)(4)(A) ...............................................................................................1

35 U.S.C. § 141(c) ..........................................................................................................14

35 U.S.C.§§ 301-307 ........................................................................................................3

35 U.S.C. § 303(a) ..........................................................................................................14

35 U.S.C. § 303(c) ..........................................................................................................14

35 U.S.C. § 305 .................................................................................................................3

35 U.S.C. §§ 311-319 .....................................................................................................3, 5

35 U.S.C. § 311 ................................................................................................................4

35 U.S.C. § 311(b) ..........................................................................................................21

35 U.S.C. § 311(c) ..........................................................................................................21

35 U.S.C. § 312(a) ..........................................................................................................16

35 U.S.C. § 312(c) .....................................................................................................16, 19

35 U.S.C. § 314 ........................................................................................................ 1, 3, 19

35 U.S.C. § 314(a) ................................................................. 4, 19, 21

35 U.S.C. § 314(b) .......................................................................19

35 U.S.C. § 314(c) .......................................................................19

35 U.S.C. § 314(d) ................................................................ passim

35 U.S.C. § 315 ...........................................................................10

35 U.S.C. §§ 315-318 ....................................................................8

35 U.S.C. § 315(b) ................................................................ passim

35 U.S.C. § 316(a) .........................................................................5

35 U.S.C. § 316(a)(2) .....................................................................5

35 U.S.C. § 316(a)(4) .....................................................................5

35 U.S.C. § 316(a)(11) ...................................................................5

35 U.S.C. § 316(b) ......................................................................5, 7

35 U.S.C. § 316(c) .........................................................................4

35 U.S.C. § 317 ...........................................................................16

35 U.S.C. § 318 ...........................................................................12

35 U.S.C. § 318(a) ....................................................................8, 17

35 U.S.C. § 319 ...........................................................8, 13, 14, 15, 17

35 U.S.C. § 325(d) .........................................................................6

Pub. L. No. 96-517, 94 Stat. 3015 (1980) .......................................3

Leahy-Smith American Invents Act, Pub. L. No. 112-29,
    125 Stat. 284 (2011) ...................................................................... 3, 4, 5

## Regulations

37 C.F.R. § 1.501-1.570 ...................................................................... 3

37 C.F.R. § 1.902-1.997 ...................................................................... 3

37 C.F.R. § 41.30-41.54 ...................................................................... 3

37 C.F.R. § 41.60-41.81 ...................................................................... 3

37 C.F.R. § 42.1(b) ............................................................................ 6

37 C.F.R. § 42.108 ............................................................................. 7

37 C.F.R. § 42.108(a) ......................................................................... 6

37 C.F.R. § 42.108(b) ......................................................................... 6

37 C.F.R. §§ 42.120-42.123 ................................................................ 8

37 C.F.R. § 42.4(a) ............................................................................ 5

37 C.F.R. § 42.5 ................................................................................. 6

77 Fed. Reg. 48680 (Aug. 14, 2012) .................................................. 7

77 Fed. Reg. 48756 (Aug. 14, 2012) .................................................. 7

77 Fed. Reg. 7041 (Feb. 10, 2012) ..................................................... 7

## Other Authorities

157 Cong. Rec. S1377 (daily ed. Mar. 8, 2011) ................................. 7

H.R. Rep. No. 112-98 (2011) ............................................................. 4

## STATEMENT OF RELATED CASES

The Director adopts the Statement of Related Cases in the opening brief of Appellant Click-to-Call Technologies, LP.  In addition, the Court's decision in this appeal may directly affect, or be directly affected by, the Court's decisions in the following pending appeals:  *Synopsis, Inc. v. Mentor Graphics Corp.*, Nos. 2014-1516, -1530; *Achates Reference Publishing, Inc. v. Apple, Inc.*, Nos. 2014-1767, -1788; *Harmonic Inc. v. Avid Tech., Inc.*, No. 2015-1072; *Shaw Indus. Group, Inc. v. Automated Creel Sys., Inc.*, Nos. 2015-1116, -1119; *SightSound Techs., LLC v. Apple Inc.*, Nos. 2015-1159, -1160; and *Schott Gemtron Corp. v. SSW Holding Co.*, No. 2015-1073.

# I.    STATEMENT OF JURISDICTION

This appeal ostensibly arises from the Patent Trial and Appeal Board's (Board's) final written decision on the merits of patentability in an inter partes review (IPR) proceeding.  However, as its opening brief makes clear, Appellant Click-to-Call Technologies, LP (C2C) actually seeks review of the Board's initial decision to institute IPR.  This Court lacks jurisdiction to review decisions by the U.S. Patent and Trademark Office (USPTO) to institute IPR proceedings because Congress has expressly mandated that such determinations are "final and nonappealable."  35 U.S.C. § 314(d); *In re Cuozzo Speed Techs., LLC*, 778 F.3d 1271, 1276 (Fed. Cir. 2015).  This Court otherwise has appellate jurisdiction over an appeal from the Board's final written decision on patentability under 28 U.S.C. § 1295(a)(4)(A) – but C2C's opening brief alleges no error in the Board's final patentability determination.

# II.    STATEMENT OF THE ISSUES

C2C seeks review of the Board's initial decision to institute IPR.  Congress has expressly mandated that such determinations are "final and nonappealable" under 35 U.S.C. § 314, as this Court held in *Cuozzo*.

C2C tries to avoid this mandate by framing the present appeal as an agency error in the construction of 35 U.S.C. § 315(b) rather than what it really is:  an attempt to appeal the Board's decision to institute IPR.  Section 315(b) provides

that an "inter partes review may not be instituted if the petition requesting the proceeding is filed more than 1 year after the date on which the petitioner . . . is served with a complaint." *See* 35 U.S.C. § 315(b) (emphasis added). According to C2C, the Board misinterpreted section 315(b) when it found that one of the four IPR petitioners in this case – Ingenio – was not barred from obtaining IPR on C2C's patent even though its predecessor company had been served with a complaint alleging infringement of the patent more than a year before Ingenio petitioned the USPTO for IPR. Although true, the Board found that this suit did not create a section 315(b) bar because Ingenio's predecessor had moved for and was granted voluntary dismissal of the suit without prejudice after it was acquired by the accused infringer. More specifically, in keeping with this Court's precedent, the Board found that the voluntary dismissal left both parties as though the suit had never been brought and, thus, there was no section 315(b) bar as to Ingenio. C2C also alleges no error in the Board's final written decision on patentability.

The USPTO intervened in this appeal to address the following limited procedural issues:

(1)    Whether this Court has jurisdiction to review a determination by the USPTO's Director to institute an IPR proceeding; and

(2)    If this Court has jurisdiction to review the Director's decision to institute an IPR proceeding, whether the Board abused its discretion in finding that section 315(b) does not bar Ingenio from obtaining IPR of C2C's patent.

## III.    STATEMENT OF THE CASE

### A.    Statutory And Regulatory Background

### 1.    Post-Issuance Administrative Review

In 1980, Congress created the first ex parte reexamination statute.  *See* Pub. L. No. 96-517, 94 Stat. 3015 (1980) (codified at 35 U.S.C. ch. 30 (1980)).  Nearly two decades later, in 1999, Congress created a second reexamination proceeding called "inter partes" reexamination – to give third party challengers greater input throughout the proceeding, and, after 2002, during any subsequent appeal.  *See Cooper Techs. Co. v. Dudas*, 536 F.3d 1330, 1332 (Fed. Cir. 2008).  Both ex parte and inter partes reexamination proceedings are "conducted according to the procedures established for initial examination under the provisions of 132 and 133 [of the Patent Act]."  *See* 35 U.S.C. §§ 305 and 314 (as in effect prior to September16, 2012).[1]  Because reexamination proceedings are conducted under

---

[1]    *See* 35 U.S.C. §§ 301-307 (ex parte reexamination); *id.* §§ 311-319 (as in effect prior to September 16, 2012) (inter partes reexamination); Pub. L. No. 112-29, § 6(c)(3)(C) (2011) (preserving inter partes reexamination for requests filed before September 16, 2012).  *See also* 37 C.F.R. §§ 1.501-1.570 (ex parte reexamination); 37 C.F.R. §§ 1.902-1.997 (inter partes reexamination); 37 C.F.R. §§ 41.30-41.54 (ex parte appeals to the Board) and 37 C.F.R. §§ 41.60-41.81 (inter partes appeals to the Board).

3

the same rules that govern the application examination process "[t]he focus of the limited proceedings . . . returns essentially to that present in an initial examination." *In re Etter*, 756 F.2d 852, 857 (Fed. Cir. 1985).

### 2.    Inter Partes Review Procedures Under The AIA

In part because inter partes reexamination proceedings were often lengthy, Congress replaced inter partes reexamination with a new proceeding called inter partes review (IPR) in 2011. *See* Pub. L. No. 112-29, 125 Stat. 284 (2011) (Leahy-Smith American Invents Act) (AIA).

In contrast to reexamination proceedings, which are conducted by examiners, IPR proceedings are adjudicatory in nature and are conducted by Administrative Patent Judges at the Board. *See* 35 U.S.C. §§ 311, 314(a); 316(c). *See also Abbott Labs. v. Cordis Corp.*, 710 F.3d 1318, 1326 (Fed. Cir. 2013) (quoting H.R. Rep. No. 112-98, at 46-47 (2011) ("The purpose of this reform was to 'convert[] inter partes reexamination from an examinational to an adjudicative proceeding'" conducted before the Board rather than before an examiner.). The AIA also altered the threshold necessary to institute an IPR, made all patents subject to such review regardless of their issue date, imposed strict time limits for completion of the review, and permitted an appeal to this Court only from the Board's final written decision as to patentability. *See* H.R. Rep. No. 112-98, at 46-47 (2011). Notably, Congress expressly made clear that the "determination by the

4

Director whether to institute an inter partes review" is "final and nonappealable"

(35 U.S.C. § 314(d)), and also required that IPRs must be completed within one

year.  35 U.S.C. § 316(a)(11)[2].

### 3.    The USPTO's Rulemaking Authority

Chapter 31 sets forth a framework for IPR proceedings.  *See* 35 U.S.C.

§§ 311-319.  To implement the AIA's new post-issuance review scheme, Congress

provided the USPTO with rulemaking authority beyond that provided in section

6(b)(2).  *See, e.g.*, 35 U.S.C. § 316(a).  The AIA gives the USPTO broad authority

to "prescribe regulations" for "establishing and governing inter partes review" and

"setting forth the standards for the showing of sufficient grounds to institute a

review under section 314(a)."  *See* 35 U.S.C. §§ 316(a)(2) and (a)(4).  The AIA

also requires that "the Director shall consider the effect of any such regulation on

the economy, the integrity of the patent system, the efficient administration of the

Office, and the ability of the Office to timely complete proceedings."  35 U.S.C. §

316(b).  In particular, the AIA mandates that "the final determination in an inter

partes review be issued not later than 1 year after the date on which the Director

notices the institution of a review."  35 U.S.C. § 316(a)(11).

The Director promulgated regulations confirming the Board's authority to

manage the new IPR proceedings and to accomplish Congress's mandate of

---

[2]  This authority has been delegated to the Board by regulation. 37 C.F.R.
§ 42.4(a).

5

completing such proceedings in an efficient and timely manner.  *See, e.g.*, 37 C.F.R. § 42.5 (conduct of proceedings generally).  Beyond its broad grant of authority to govern proceedings efficiently and to meet strict time deadlines, the AIA gives the USPTO discretion to deny a petition in the event that substantially the same grounds of unpatentability have been proposed as in a previous request. *See* 35 U.S.C. § 325(d) ("In determining whether to institute or order a proceeding under this chapter, chapter 30, or chapter 31, the Director may take into account whether, and reject the petition or request because, the same or substantially the same prior art or arguments previously were presented to the Office.").

Consistent with the efficiency concerns contemplated by the AIA, the agency implemented a regulatory scheme that should "be construed to secure the just, speedy, and inexpensive resolution of every proceeding."  37 C.F.R. § 42.1(b).  One such regulation states that "[w]hen instituting inter partes review, the Board may authorize the review to proceed on *all or some* of the challenged claims and *on all or some* of the grounds of unpatentability asserted for each claim."  37 C.F.R. § 42.108(a) (emphasis added).  That same rule clarifies that "[a]t any time prior to institution of inter partes review, the Board may deny *some or all* grounds for unpatentability for *some or all* of the challenged claims" and a "[d]enial of a ground is a Board decision not to institute inter partes review on that ground."  37 C.F.R. § 42.108(b) (emphasis added).

The Agency made clear during the rule-making process that rule 42.108 "is consistent with the efficient administration of the Office, which is a consideration in prescribing inter partes review regulations under 35 U.S.C. 316(b) . . ." *See, e.g.*, 77 Fed. Reg. 7041, 7046 (Feb. 10, 2012).  In fact, the Board's Trial Practice Guide explains that "the Board will streamline the issues for final decision by authorizing the trial to proceed only on the challenged claims" and any "claim or issue not included in the authorization for review is not part of the trial." *See* 77 Fed. Reg. 48756, 48765 (Aug. 14, 2012).[3]  The AIA legislative history confirms that Congress intended to achieve such efficiency by giving the Director a great deal of discretion in determining whether to deny institution, even for otherwise meritorious petitions.  *See, e.g.*, 157 Cong. Rec. S1377 (daily ed. Mar. 8, 2011) (Senator Kyl explained that the inclusion in 35 U.S.C. § 316(b) of considering the USPTO's ability to timely complete proceedings "reflects a legislative judgment that it is better that the [USPTO] turn away some petitions that otherwise satisfy the threshold for instituting an inter partes or post-grant review than it is to allow the [USPTO] to develop a backlog of instituted reviews that precludes the [USPTO] from timely completing all proceedings").

---

[3]     *See also* 77 Fed. Reg. 48680, 48689 (Aug. 14, 2102) ("Section 42.108(b) provides that the Board . . . may deny some or all grounds for unpatentability on some or all of the challenged claims.  The rule is consistent with the efficient administration of the Office, which is a consideration in prescribing inter partes review regulations under 35 U.S.C. 316(b), as amended.").

7

### 4.    IPR Trial And The Final Written Decision

After an IPR is instituted, the "trial" phase begins.  *See* 35 U.S.C. §§ 315-318; 37 C.F.R. §§ 42.120-42.123.  If the IPR is "instituted and not dismissed . . . the [Board] shall issue a final written decision with respect to the patentability of any patent claim challenged by the petitioner and any new claim added under section 316(d)."  35 U.S.C. § 318(a).  This final written decision with respect to patentability is reviewable by this Court.  35 U.S.C. §§ 319, 318(a).

C2C seeks to have this Court review a discretionary order in a post-issuance proceeding created by the AIA – an order the statute and this Court expressly designated as "final and nonappealable."  35 U.S.C. § 314(d); *Cuozzo*, 778 F.3d at 1276.

### B.    Proceedings before the Board

### 1.    The prior relationship between the parties

C2C owns the patent-in-suit:  U.S. Patent No. 5,818,836 ("the '836 patent"). C2C's opening brief presents a thorough account of the events taking place between the issuance of the '836 patent and the filing of Ingenio's petition to institute IPR.  The most relevant of these facts are as follows:

- On October 6, 1998**,** the'836 patent issued to inventor and then-owner, Stephen DuVal.  (A46.)

- Shortly thereafter, Mr. DuVal granted an exclusive license under the '836 patent to InfoRocket.com, Inc. (InfoRocket).  (A287.)

8

- On June 8, 2001, InfoRocket filed a civil action against Keen, Inc. ("Keen") alleging infringement of the '836 patent.  *See Inforocket.com, Inc. v. Keen, Inc.*, CA No. 1:01-cv-05130-LAP (S.D.N.Y.) (A90-A145; A301-A302.)

- On August 31, 2001, Keen filed a civil action against InfoRocket alleging infringement of its own patent.  *See Keen, Inc. v. Inforocket.com, Inc.*, CA No. 1:01-cv-8226-LAP (S.D.N.Y.) (A34-A42.)

- While both of these actions were still pending, Keen acquired InfoRocket as a wholly-owned subsidiary.  (A287.)

- On March 21, 2003, InfoRocket and Keen stipulated to a voluntary dismissal without prejudice of both suits.  (A033, A041.)

- Keen subsequently changed its name to Ingenio, Inc.  (A287.)

- Sometime in early 2004, Ingenio and Mr. DuVal had a falling out over royalties, and Ingenio's license under the '836 patent ended.  (*See* C2C Br. at 8.)

- Thereafter, C2C acquired the '836 patent from Mr. DuVal.

- On May 29, 2012, C2C brought suit against Ingenio *et al*.  *See Click to Call Technologies LP v. Ingenio et al.*, Civil Action No. 1:12-cv-00465-SS.

- On May 28, 2013, Oracle Corporation, Oracle OTC Subsidiary LLC, Ingenio, and Yellowpages.com LLC petitioned the Board to undertake the IPR of certain claims in the '836 patent.  (A285.)

## 2.    The Board's decision to institute IPR

As stated above, Ingenio and three other parties petitioned the USPTO to

institute IPR of certain claims in the '836 patent.  (A285.)  The Board granted the

9

parties' petition and instituted IPR as to some of the claims, but declined to institute IPR as to other claims.  (A284-A290.)

As part of this initial decision, the Board also rejected C2C's challenge to its jurisdiction to institute IPR based on 35 U.S.C. § 315 (A76-A86).  As it does before this Court, C2C argued that section 315 bars Ingenio from obtaining IPR on the '836 patent because InfoRocket had previously served its predecessor, Keen, with a complaint alleging infringement of the '836 patent more than a year before Ingenio filed its petition for IPR.  (A80-A86.)  The Board was not persuaded that section 315(b) applied because the litigation between Keen and InfoRocket was dismissed voluntarily without prejudice when Keen acquired InfoRocket, thus "leaving the parties as though the action had never been brought."  (A285, A289 (citing *Graves v. Principi*, 294 F.3d 1350, 1356 (Fed. Cir. 2002); *Bonneville Assocs., Ltd. P'ship v. Barram*, 165 F.3d 1360, 1364 (Fed. Cir. 1999)).)  Accordingly, the Board found that InfoRocket's service of the complaint on Keen did not bar Keen's predecessor, Ingenio – or any of the other petitioners – from pursuing IPR of the '836 patent.  *Id.*

### 3.     The Board's Final Written Decision

In its final written decision on patentability, the Board found unpatentable all but three of the claims under review in the '826 patent.  C2C's opening brief does not assert any error in the Board's final written decision.

## IV.   SUMMARY OF THE ARGUMENT

C2C challenges the Board's decision to institute IPR of its patent.  This Court lacks jurisdiction over challenges to the Board's institution decisions – which include C2C's argument that Ingenio is barred under 35 U.S.C. § 315(b), from seeking IPR against the '836 patent.  35 U.S.C. § 314(d); *see also Cuozzo*, 778 F.3d at 1276-77 (holding that § 314(d) prohibits review of the decision to institute inter partes review even after a final decision).

Even if the Board's institution decision was somehow subject to review by this Court, the Board did not abuse its discretion in instituting IPR here.  Rather, the Board properly found that Ingenio's petition was not time-barred by 35 U.S.C. § 315(b) because the asserted district court litigation had been voluntarily dismissed without prejudice such that there was no effective complaint date.

## V.   ARGUMENT

### A.   Standard of review

This Court reviews its own jurisdiction *de novo*.  *See Litecubes, LLC v. N. Light Prods., Inc.*, 523 F.3d 1353, 1360 (Fed. Cir. 2008).  Regulations issued by the USPTO under a statutory grant of rulemaking authority are entitled to deference unless based on an unreasonable construction of the statute, *see Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984), and the USPTO's interpretation of its own regulations is "controlling unless plainly

11

erroneous or inconsistent with the regulation," *Auer v. Robbins*, 519 U.S. 452, 461

(1997) (internal quotation marks omitted); *see also In re McDaniel*, 293 F.3d 1379,

1382 (Fed. Cir. 2002) ("An agency's interpretation of its own regulations is

normally entitled to considerable deference, and that interpretation ordinarily will

be accepted unless it is plainly erroneous or inconsistent with the regulation.").

The Board's actions may not be set aside unless "arbitrary, capricious, an abuse of

discretion, unsupported by substantial evidence, or otherwise not in accordance

with law." *In re Sullivan*, 362 F.3d 1324, 1327 (Fed. Cir. 2004); 5 U.S.C.

§ 706(2)(A).

## B.     Decisions to institute IPR are non-appealable and cannot be reviewed by this Court

Despite C2C's claim that it is challenging the Board's legal interpretation of

35 U.S.C. § 315(b), C2C's argument is, in effect, a challenge to the Board's

decision to institute.  C2C Br. at 2 ("Click-to-Call does not appeal the merits of

that decision because the Board lacked jurisdiction and authority to review the

'836 Patent"), *see also* 16-26.  Congress clearly expressed its intent to foreclose

after-the-fact relitigation of the USPTO's decisions to institute an IPR by

specifically providing that the USPTO's decision "whether to institute" such a

proceeding "shall be final and nonappealable," 35 U.S.C. § 314(d), and by

authorizing this Court to review only the Board's final written decisions as to

patentability, *see* 35 U.S.C. § 318.  And, this Court recently confirmed the

statutory bar precluding review of such decisions, holding that the AIA "is written to exclude all review of the decision whether to institute review," and that "[section] 314(d) prohibits review of the [Agency's] decision to institute IPR even after a final decision." *Cuozzo*, 778 F.3d at 1276.

Like C2C, the patent owner in *Cuozzo* sought review by this Court of the Board's initial institution decision after the Board conducted IPR and issued a final written decision holding the claims at issue unpatentable. *Cuozzo*, 778 F.3d at 1275. In addition to challenging the Board's final decision on patentability, the patent owner challenged the Board's decision to institute IPR in the first instance. *Id*. at 1276. More specifically, the patent owner challenged the Board's authority to institute IPR as to certain of its claims based on prior art that, although cited by the IPR petitioner against the claims, was not applied by the Board in the same manner as presented by the petitioner's request for IPR. *Id*.

This Court held that it lacked jurisdiction to entertain the patent owner's challenge to the Board's institution decision. *Id*. at 1275. In doing so, the Court examined the plain language of the AIA and concluded that section 314(d) insulates institution decisions from review. *Id*. The Court also noted the title of this provision – "No Appeal" – and its text providing that an institution decision is both "nonappealable" and "final." *Id*. at 1276 (quoting 35 U.S.C. § 314(d)). The Court further relied on the language in section 319, which authorizes "a party . . .

13

dissatisfied with the final written decision of the [Board] under section 318(a)" to appeal. *Id*. (discussing 35 U.S.C. § 319) (emphasis added). The Court also considered section 141(c), which authorizes dissatisfied parties in inter partes reviews and post-grant reviews to appeal to this Court from a "final written decision . . . under section 318(a) [or 328(a)] . . . ." *Id*. (discussing 35 U.S.C. § 141(c)). Based on this analysis, the Court held that the plain language of the AIA means precisely what it says – decisions to institute IPR proceedings are not reviewable.

### 1.  The legislative history of the AIA confirms the absence of any statutory basis for C2C's present challenge

If the plain language of the AIA and *Cuozzo* were not enough, the legislative journey to the enactment of the AIA demonstrates that institution decisions are unreviewable. The original 1980 statute creating the ex parte reexamination procedure provided a far narrower appealability bar. Congress made initiation of an ex parte reexamination contingent upon the Director's finding of a "substantial new question of patentability," and it provided—then as now—that "[a] determination by the Director . . . that no substantial new question of patentability has been raised will be final and nonappealable." 35 U.S.C. § 303(a), (c) (emphasis added). In contrast to the AIA's post-grant review scheme, therefore, Congress expressly foreclosed review only of a negative determination, i.e., a decision not to institute a reexamination. Nevertheless, even under that seemingly

more permissive scheme, this Court held that it lacked jurisdiction to review the USPTO's decision to initiate an ex parte reexamination. In *In re Hiniker Co*., 150 F.3d 1362 (Fed. Cir. 1998), this Court explained that its jurisdiction was limited to review of the USPTO's ultimate decision as to patentability. Any error in the agency's initial decision to commence the proceeding, this Court reasoned, was "washed clean" by the final determination, which was all that Congress had authorized the Court to review. *See id.* at 1366–67. The Court also stressed that "[s]ection 303, the provision that Hiniker argues was violated here, is directed toward the Commissioner's authority to institute a reexamination, and there is no provision granting [this Court] direct review of that decision." *Id*. at 1367.

Likewise here, Congress has authorized this Court to review only the Board's final decision with respect to patentability. *See* 35 U.S.C. § 319; *St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.*, 749 F.3d 1373, 1376 (Fed. Cir. 2014) (35 U.S.C. § 319 "is most naturally read to refer precisely to the Board's decision under section 318(a) on the merits of the inter partes review"). As in *Hiniker*, "there is no provision" authorizing "direct review" of the USPTO's threshold decision to institute a proceeding. To the contrary, Congress has expressly provided that the USPTO's institution decision – not just a decision not to initiate post-issuance review – "shall be final and nonappealable." 35 U.S.C. § 314(d). By adding that explicit bar on judicial review, Congress could not have

15

intended to permit broader appeal rights than this Court permitted in connection with ex parte reexamination. This Court recently came to the same conclusion in *Cuozzo* on the basis of *Hiniker*. 778 F.3d at 1277. The Court observed that Congress's desire not to permit appeal rights broader than those under the ex parte review scheme is especially clear because the AIA explicitly bars review of decisions to institute. *Id*.

A comparison to the now-superseded provisions for inter partes reexamination is similarly instructive. Under that scheme, Congress required the Director to determine "whether a substantial new question of patentability affecting any claim of the patent concerned is raised by" a request for inter partes reexamination. 35 U.S.C. § 312(a) (2000). Additional statutory provisions imposed other restrictions on the Director's authority to commence an inter partes reexamination. For example, former section 317 barred a third-party requester from seeking reexamination if the requester had previously lost a civil action challenging the patent's validity. *See* 35 U.S.C. § 317 (2000). Nevertheless, Congress provided only that "[a] determination by the Director under [section 312(a)] shall be final and non-appealable." 35 U.S.C. § 312(c) (2000) (emphasis added). The appealability bar thus foreclosed review only of the "substantial new question of patentability" issue, without limiting the Court's jurisdiction to review other restrictions on the commencement of inter partes reexaminations.

In the AIA, by contrast, Congress provided without qualification that the USPTO's decision "whether to institute" an inter partes review is "final and nonappealable." 35 U.S.C. § 314(d). Particularly when read against the far narrower appealability bars that Congress employed in prior statutory schemes, it is clear that Congress intended to foreclose relitigation in this Court of any aspect of the USPTO's decision to institute a particular post-grant review proceeding.

Even if this Court had not spoken on the issue in *Cuozzo*, C2C's contention cannot be reconciled with the plain language of the AIA. As already discussed, the only Board decision that Congress authorized this Court to review is the Board's "final written decision with respect to the patentability" of the claims at issue. *See* 35 U.S.C. §§ 318(a), 319. The USPTO's threshold decision to institute an IPR proceeding is not such a decision. *See Hiniker*, 150 F.3d at 1367.

Interpreting section 314(d) to permit appeal of the USPTO's institution decision as part of an appeal from a final patentability decision would also render section 314(d) superfluous. The APA already permits challenges of only those agency decisions that are "final." 5 U.S.C. § 704. To be "final" within the meaning of the APA, an agency action: (1) "must mark the 'consummation' of the agency's decisionmaking process" and "not be of a merely tentative or interlocutory nature"; and (2) "must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*,

17

520 U.S. 154, 177-78 (1997) (internal quotation marks omitted).  An agency's

decision to commence a particular administrative proceeding – a proceeding that

may or may not result in any alteration of the status quo – is not final agency action

under the APA.  *See FTC v. Standard Oil Co*., 449 U.S. 232, 239-243 (1980)

(FTC's issuance of administrative complaint finding "reason to believe" the

defendant had violated the law was not final agency action).

Thus, even in the absence of section 314(d), a party dissatisfied with the

Director's decision to institute an IPR could not have challenged that decision until

the Board issued its final patentability decision.  *Cf. Cuozzo*, 778 F.3d at 1276 ("A

declaration that the decision to institute is 'final' cannot reasonably be interpreted

as postponing review until after issuance of a final decision on patentability.").

Had Congress intended to merely postpone judicial review until the Board issued

its patentability decision, as C2C suggests, it would have had no need to enact

section 314(d).  *Cf. Morgan v. Principi*, 327 F.3d 1357, 1361 (Fed. Cir. 2003)

("Congress is presumed to legislate against the backdrop of existing law.").  And,

in any event, no canon of statutory construction can justify interpreting "final and

nonappealable" to mean "provisional and appealable later."

For all these reasons, this Court should not adopt a reading of section 314(d)

that would render Congress's efforts to streamline judicial review of USPTO

determinations entirely redundant of APA strictures already in place.

**2.      The only reasonable reading of the statute is that section 314(d) bars the review of a section 315(b) determination made as part of an institution decision under section 314**

In its opening brief, C2C attempts an end-run around this Court's interpretation of section 314(d) in *Cuozzo*, by casting its appeal as a challenge to the Board's interpretation of section 315(b).  (C2C Br. at 17-25.)  But this Court rejected that argument in *St Jude*.  Moreover, as this Court concluded in *Cuozzo*, for the appealability bar in section 314(d) to yield its full benefit, it must preclude review of any institution decision, not just a decision predicated on a particular statutory subsection.  778 F.3d at 1276–77.  If Congress had intended the section 314(d) bar to apply to only those IPR initiation determinations concerning subsections (a) or (b) of section 314, as C2C implicitly suggests, it would have referred to those subsections, just as it did in the immediately preceding provision, and in the inter partes reexamination statute.  *See* 35 U.S.C. § 314(c) (requiring the USPTO to "notify the petitioner and patent owner, in writing, of the Director's determination under subsection (a) or (b)"); 35 U.S.C. 312(c) (2000) (providing that only a determination under section 312(a) "shall be final and nonappealable").  Further, because section 314, which is entitled "Institution of inter partes review," is the only section of the Patent Act that grants the Director authority to make an institution decision, *every* institution decision is a decision under section 314.

This Court has also rejected the interpretation urged by C2C.  *See St. Jude,* 749 F.3d at 1376; s*ee also Zoll Lifecor Corp. v. Phillips Elec. N. Am. Corp*., 577 Fed. Appx. 991, 993 (Fed. Cir. 2014).  In *St. Jude*, this Court considered whether a petitioner was barred from filing a petition under section 315(b).  *St. Jude*, 749 F.3d at 1374-75.  While the Board denied institution of St. Jude's petition for IPR, *St. Jude* is helpful to explain that the bar on reviewability in 35 U.S.C. § 314(d) includes the Director's determination of whether a petitioner is barred from filing a petition under section 315(b).  In denying the institution of St. Jude's petition for IPR, the Board explained that because St. Jude was served with a counterclaim of infringement of the patent-at-issue more than one year prior to St. Jude's petition, St. Jude was barred under section 315(b) from seeking IPR of that patent.  *See id*. at 1375.  This Court dismissed St. Jude's appeal of the Board's decision not to institute, holding that it could not hear the appeal because:

> the statute goes beyond merely omitting, and underscoring through its structure the omission of, a right to appeal the non-institution decision. It contains a broadly worded bar on appeal. Under the title, "No Appeal," Section 314(d) declares that "[t]he determination by the Director whether to institute an inter partes review under this section shall be final and nonappealable." *Id*. § 314(d).  That declaration may well preclude all review by any route . . . It certainly bars an appeal of the non-institution decision here.

*Id*. at 1376.  This interpretation follows from the language of the statute which expressly designates that "the Director" make the decision to institute in section

314(a) and covers all the considerations the Director must make prior to institution. *See St. Jude*, 749 F.3d at 1376. And, as *Cuozzo* makes it clear, section 314(d) "prohibits review of the decision to institute IPR even after a final decision." *Cuozzo*, 778 F.3d at 1276.

Under the contrary interpretation implicitly urged by C2C (C2C Br. at 12-16), section 314(d) would not prevent a petitioner from challenging a non-institution decision in court, for example, if the USPTO denied a request for IPR because the petition was untimely (35 U.S.C. § 311(c))**,** or because the petition sought review on an improper statutory ground (35 U.S.C. § 311(b)). Such an interpretation is impossible to ascribe to congressional design, particularly given Congress's longstanding history of barring review of USPTO decisions declining to initiate a variety of post-issuance review proceedings.

For all these reasons, C2C cannot seek review of the Board's initial decision to institute IPR simply because it also includes a section 315(b) determination. By failing to argue error in the Board's patentability determination in its opening brief, C2C concedes that that the Board's determination is correction.

**C.    Even if the Court had jurisdiction to review the Board's decision to institute IPR of C2C's patent, the Board did not abuse its discretion in making its section 315(b) determination**

Assuming this Court had jurisdiction to review the Board's initial IPR decision – or somehow a 315(b) determination contained therein – C2C would

21

need to demonstrate that the Board's decision was somehow an abuse of discretion.
An abuse of discretion can only occur "if the decision (1) is clearly unreasonable,
arbitrary, or fanciful; (2) is based on an erroneous conclusion of law; (3) rests on
clearly erroneous fact findings; or (4) involves a record that contains no evidence
on which the Board could rationally base its decision." *Eli Lilly & Co. v. Board of
Regents of University of Washington*, 334 F.3d 1264, 1267 (Fed. Cir. 2003).  Far
from any abuse of discretion, the Board's decision to institute an IPR of the '826
patent was consistent with this Court's precedent.

Although section 315(b) states that an "inter partes review may not be
instituted if the petition requesting the proceeding is filed more than 1 year after
the date on which the petitioner . . .  is served with a complaint" (*see* 35 U.S.C.
§ 315(b)), InfoRocket's suit against Keen did not create a section 315(b) bar as to
Ingenio.  The district court litigation that C2C argues created a section 315(b) bar
as to Ingenio was voluntarily dismissed without prejudice after Keen purchased
InfoRocket as a wholly-owned subsidiary.  This Court has consistently interpreted
the effect of dismissals without prejudice as leaving the parties as though the action
had never been brought.  *See Graves v. Principi*, 294 F.3d 1350, 1356 (Fed. Cir.
2002) (the dismissal of an action without prejudice leaves the parties as though the
action had never been brought); *Bonneville Assocs., Ltd. P'ship v. Barram*, 165
F.3d 1360, 1364 (Fed. Cir. 1999) (In the federal courts the rule is that "[t]he effect

of a voluntary dismissal without prejudice pursuant to Rule 41(a) 'is to render the proceedings a nullity and leave the parties as if the action had never been brought.'") (citations omitted). Thus, the Board properly found that it was as if InfoRocket had never asserted the complaint against Keen. (A285, A289.)

C2C incorrectly argues that *Graves* and *Bonneville* do not apply in section 315(b) determinations because, by making service of a complaint the trigger for a 315(b) bar, Congress allegedly intended notice of suit to be the sole factor upon which such determinations are made. (*See* C2C Br. at 27-30.) Under C2C's strained reading of the statute, because Ingenio (d.b.a. YT Interactive) "did in fact receive notice of the infringement claims against it when it was served with the complaint," the fact that the complaint was eventually dismissed without prejudice is of no consequence. (C2C Br. at 27, 32.) The facts of this case belie the very interpretation C2C espouses. InfoRocket brought suit against Keen, Keen purchased InfoRocket, and the suit between them was voluntarily dismissed without prejudice. In effect, Keen voluntarily dismissed its subsidiary's action against itself. Under this scenario, it was completely reasonable for the Board to treat this dismissal without prejudice as rendering service of suit on Keen and its successors in privity a nullity. Accordingly, the Board did not abuse its discretion

23

when it determined that Ingenio (d.b.a. YT Technologies) was not time-barred

from obtaining IPR of the '836 patent by section 315(b).[4]

---

[4]  Should C2C change course and request that this Court treat its appeal as a request for mandamus relief (*see Cuozzo*, 778 F.3d at 1277), such relief would not be appropriate here.  The Board's decision to institute is discretionary and, thus, mandamus is unavailable.  *See Heckler v. Ringer*, 466 U.S. 602, 616 (1984) (finding mandamus is "intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear *nondiscretionary* duty." (emphasis added)).

# VI.   CONCLUSION

This Court lacks jurisdiction to review Board decisions to institute IPR, like the one presented here.  Even assuming that jurisdiction existed, the Board did not abuse its discretion instituting IPR of C2C's patent.  Because C2C's opening brief fails to argue any error in the Board's final decision on patentability, this Court should affirm that decision on all grounds.

Respectfully submitted,

May 26, 2015

/s/ *Mary L. Kelly/*

NATHAN K. KELLEY
Solicitor

THOMAS W. KRAUSE
Deputy Solicitor

SCOTT C. WEIDENFELLER
Senior Counsel for Patent Law
 and Litigation

MARY L. KELLY
Associate Solicitor

*Office of the Solicitor* – Mail Stop 8
U.S. Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
571-272-9035

*Attorneys for the Director of the
United States Patent and
Trademark Office*

## CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2015, I electronically filed the foregoing

BRIEF FOR INTERVENOR – DIRECTOR OF THE UNITED STATES PATENT

AND TRADEMARK OFFICE using the Court's CM/ECF filing system.  Counsel

for the Appellant was electronically served via e-mail per Fed. R. App. P. 25 and

Fed. Cir. R. 25(a) and 25(b).


        /s/ *Mary L. Kelly/*
Associate Solicitor
U.S. Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, VA 22313-1450
571-272-9035